

**DAMIAN L. ALBERGO**
**Principal**
**Admitted in NJ & NY**
**Direct: 201-351-0651**
**Main: 201-354-4999**
**Fax: 201-351-0402**
damian.albergo@albergolaw.com

May 6, 2022

**VIA ECF**
Hon. Rachel P. Kovner, U.S.D.J.
United States District Court for the New York Eastern District
Theodore Roosevelt United States Courthouse
225 Cadman Plaza East
Brooklyn, New York 11201

    Re:    Nicole J. Gallagher v. Mountain Mortgage Corp., et al.
              **Case No.: 2:22-cv-00715-RPK-JMW**

Dear Judge Kovner:

    This firm represents Nicole J. Gallagher, the Plaintiff in the above-referenced action. The action involves claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 et seq., among others, which have been resolved through vigorous arms-length negotiations in a global settlement in which the dismissal of this litigation is one of several crucial elements.

    Accordingly, pursuant to *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015) and Federal Rule of Civil Procedure 41(a)(1)(A), all parties to this action, by and through their respective counsel, respectfully request that the Court approve the global settlement they have reached. Initially, the parties will dismiss this action *without* prejudice. The parties will then dismiss this action *with* prejudice once certain actions are taken, as set forth in the proposed settlement agreement, which is attached hereto as **Exhibit A**.

    For the reasons explained in detail below, the parties further respectfully request that the Court (1) approve the settlement without a formal "*Cheeks* review" hearing, and (2) "so order" ***both*** the within dismissal without prejudice *and* the forthcoming dismissal with prejudice.

*Please reply to:*
15 Warren Street
Suite 36
Hackensack, NJ 07601

www.albergolaw.com

11 Broadway
Suite 615
New York, NY 10004
212-201-6130

## I. Background

This is an atypical FLSA case. Ms. Gallagher is a sophisticated professional with years of experience in the mortgage banking industry. The claims in the Complaint arose from a period during which she was employed by Defendants, Mountain Mortgage Corp. ("MMC") and Mr. Grossman, in anticipation of her prospective *purchase of the company*. In fact, Ms. Gallagher is currently a 9% owner of the company and, should the settlement agreement be approved, she will become the 100% owner. In short, Ms. Gallagher is not the sort of FLSA plaintiff for whom *Cheeks* review was designed.

The purchase agreement ("PA") conditioned Ms. Gallagher's purchase of MMC on the successful application, by a date certain, for a Change of Ownership with the New York State Department of Financial Services. For various reasons, that contingency did not occur by the deadline. Even before the deadline passed, the relationship of the parties had deteriorated. By the time it came and went, their relationship had ruptured, with cross-demands for damages and monies owed, including the damages Ms. Gallagher had sought in this action. The PA also contained an arbitration clause mandating arbitration for all claims arising out of the PA.

The settlement agreement effectively supersedes the PA and provides for Ms. Gallagher's purchase of MMC under new terms. Among other consideration for this new purchase agreement (at a substantially reduced purchase price) is the settlement of this action.

If for no other reason, dismissal of this action is warranted because, if approved, the settlement agreement will make Ms. Gallagher, the plaintiff, the 100% owner of MMC, the corporate defendant.

## II. The Purposes of *Cheeks* Review

In *Cheeks*, the Second Circuit interpreted the FLSA's remedial purpose "to prevent abuses by unscrupulous employers… and remedy the disparate bargaining power between employers and employees" as requiring, under FRCP 41(a)(1)(A), judicial approval of settlement agreements in all FLSA actions. *Cheeks*, supra, 796 F.3d at 206-207. Because of "the potential for abuse in such settlements," the *Cheeks* Court concluded that "the need for such employee protections, even where the employees are represented by counsel, remains." *Id*. at 207.

Possible abuses include "highly restrictive confidentiality provisions," overbroad releases that "include[ ] unknown claims and claims that have no relationship whatsoever to wage-and-hour issues," attorneys' fees ranging between 40 and 43.6 percent of the total settlement payment that are unsupported by documentation, and pledges by attorneys not to represent parties in future claims against the same defendants." *Id*. at 206.

Neither these, nor any other, of the *Cheeks* Court's concerns exist in this case, as demonstrated by the background above and the specific provisions of the settlement agreement discussed below.

### III. Analysis of the Relevant Provisions of the Settlement Agreement under *Cheeks*

First, should the Court approve the settlement agreement, Ms. Gallagher will pay minimal attorneys' fees based on an hourly rate in connection with this action, which has gone no further than the filing of a complaint. Second, the confidentiality provision of the settlement agreement is not "highly restrictive" but, rather, relatively permissive. Indeed, the confidentiality provision specifically permits the substance of the settlement agreement to be disclosed to this Court for the purpose of dismissing this litigation, thus making it a public document. The parties may also disclose the substance of the settlement agreement (1) as required by law, (2) to enforce its terms, (3) to obtain the necessary state-regulatory approvals required by the settlement agreement, and (4) to the parties' attorneys' and accountants on a need-to-know basis.

Third, given the parties relatively equal bargaining power and the specific circumstances of this case, the sorts of provisions that may require *Cheeks* review in a typical FLSA case make perfect sense here. For example, here, the releases are necessarily broad and include unknown claims and claims that have no relationship whatsoever to wage-and-hour issues precisely because this is a *global* settlement. In addition to Ms. Gallagher's FLSA claims, the settlement agreement also settles all the known and unknown claims the parties had under the PA, which have nothing to do with the FLSA and would have to be arbitrated pursuant to the PA's arbitration clause.

Additionally, the settlement agreement expressly provides that, "except as provided herein, the Parties maintain their rights to assert various defenses, counterclaims and affirmative causes of action…" This is why, after dismissing this case without prejudice, the settlement agreement permits Ms. Gallagher to refile this action should certain contingencies fail to occur. On the other hand, if such contingencies do occur, Ms. Gallagher will seek dismissal *with prejudice* because she will become the 100% owner of the corporate defendant.

Fourth, the settlement "amount" is fair and reasonable. Ms. Gallagher's damages in this FLSA action are relatively significant, reaching potentially over $200,000. However, the parties factored those potential claims into the settlement agreement's reduced purchase price for MMC. Under the PA, Ms. Gallagher initially agreed to purchase MMC for $500,000. The settlement agreement now provides that she will pay only $100,000 for MMC, albeit without a New York Mortgage Banker's license. The $400,000 reduction in the purchase price for MMC is, in the parties' view, substantial consideration. After all, the purchase of MMC was always Ms. Gallagher's goal and, through the settlement agreement, that goal appears likely.

In considering whether a settlement is fair and reasonable, a court reads the settlement to determine whether it "reflects a 'reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching.'" *Le v. Sita Information Networking Computing USA, Inc.*, 2008 WL 724155 at *2 (E.D.N.Y. June 12, 2008) (quoting *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982)); see also *Kopera v. Home Depot U.S.A., Inc.*, 2011 WL 135016, at *2 (S.D.N.Y. June 24, 2011) ("If the proposed settlement reflects a reasonable compromise over contested issues, the settlement should be approved.")

The settlement agreement reflects a reasonable compromise of the parties' many disputed issues. Ms. Gallagher is settling her FLSA claims as part of this global settlement because the

benefit of owning MMC outright and thereby being the master of her own financial independence outweighs the risks and costs of further litigating her claims in two separate forums—i.e., her FLSA claims in this Court and her claims under the PA before an arbitration panel pursuant to the arbitration clause in the PA. If approved by this Court, the settlement agreement will obviate all such litigation.

**<u>Conclusion</u>**

In light of the above, the Court need not engage in any further *Cheeks* review. Rather, it should approve the settlement agreement and "so order" the within dismissal without prejudice. For all the same reasons, if and when the parties return to this Court in the near future seeking to dismiss this case *with* prejudice, the Court should not require any further review and "so order" the dismissal with prejudice as well.

As always, the Court's time and consideration is greatly appreciated.

                                                Respectively submitted,

                                                /s/Damian Albergo
                                                Damian L. Albergo

cc:    Scott Samlin, Esq. (via ECF)
       Eric Riso, Esq. (via ECF)
       Allen Zeller, Esq. (via ECF)
       John Mincone, Esq. (via ECF)
       Michael Barone, Esq. (via email)
       Ms. Nicole J. Gallagher (via email)

**EXHIBIT "A"**

# SETTLEMENT AGREEMENT AND MUTUAL RELEASE

This Settlement Agreement and Mutual Release ("Agreement") is entered into on this 2 6 ᵗʰ day of April, 2022 ("Effective Date") by and among **MARK GROSSMAN**, 1435 Morris Avenue, Union, NJ 07083 ("Grossman" or "Seller"), **NICOLE J. GALLAGHER**, 11 Eimer Avenue, Malverne, NY 11565 ("Gallagher" or "Purchaser"), and **MOUNTAIN MORTGAGE CORP.**, a New Jersey company with its principal office located at 1435 Morris Avenue, Union, NJ 07083 ("MMC" or "Company"). Seller, Purchaser and MMC may be referred to herein individually as a "Party" and collectively as the "Parties."

## RECITALS

**WHEREAS**, MMC, Grossman and Gallagher are Parties to that certain Purchase Agreement Relating to All of the Ownership Interest of Mountain Mortgage Corp. dated September 1, 2020 ("Purchase Agreement"). Capitalized terms used but not defined herein shall have the meaning set forth in the Purchase Agreement; and

**WHEREAS**, due to certain disputes arising between the Parties in connection with effectuating a sale of MMC by Seller to Purchaser, including but not limited to the required Change of Control of the mortgage bankers licenses held by MMC, on or before January 31, 2022 as provided for in the Purchase Agreement, the Purchase Agreement was canceled by Grossman; and

**WHEREAS**, in addition to the Parties' respective demands under the failed Purchase Agreement, Gallagher filed a complaint against Grossman and MMC in the United States District Court for the Eastern District of New York ("Court"), captioned and docketed as <u>Nicole J. Gallagher v. Mountain Mortgage Corp. and Mark Grossman</u>, Docket No. 2:22-cv-00715 (the "Litigation"); and

**WHEREAS**, except as provided herein, the Parties maintain their rights to assert various defenses, counterclaims and affirmative causes of action; and

**WHEREAS**, the Parties desire to enter into this Settlement Agreement and Mutual Release to provide for the full settlement and release of all claims and potential claims between the Parties regarding the matters in dispute in connection with the Purchase Agreement, the Litigation and prospective additional litigation; and

**NOW, THEREFORE**, in consideration of the agreements, promises, releases and mutual covenants contained herein, and other good and valuable consideration, the adequacy and sufficiency of which is hereby acknowledged, and with the intent to be legally bound hereby, the Parties agree as follows:

**TERMS AND CONDITIONS**

1.  **Sale of Mountain Mortgage Corp**.  The Parties hereby agree that the Purchase Agreement is terminated and of no legal effect, except as otherwise set forth herein.  There Parties further agree that Grossman will sell his remaining 91% of the common stock in MMC, free and clear of all liens, claims and encumbrances, to Gallagher for the sum of $100,000.00, said sum already having been conveyed by Gallagher to Grossman, subject to the approval of the appropriate regulatory agencies of New Jersey and Connecticut for Change of Control, and from Florida for issuance of a license to Gallagher (the "Sale").

It is acknowledged by the Parties that the transfer of or Change of Control of MMC's bankers license with New York is not a part of this Agreement since said New York license is in the formal process of being surrendered to the New York Department of Financial Services.

It is further understood and agreed by and between the Parties that the Sale is conditioned upon the following terms and conditions:

(a)     The Parties shall ensure that they and/or their representatives will file within fourteen (14) days of the signing of this Agreement, the necessary applications and all required paperwork with the appropriate entities of the States of New Jersey and Connecticut to secure approval of Change of Control of the banking licenses held by MMC from those states and approval for the issuance of a license to Gallagher from Florida.  If any state advises the Parties that their submissions/applications are incomplete, the Party or Parties who have been so advised shall have an additional five (5) business days to submit the missing documents or information.

(b)     The Parties will, to the extent necessary, cooperate with each other in connection with securing the approvals from New Jersey, Connecticut and Florida; provided, however, that unless otherwise stated, the deadlines set forth herein are to be strictly enforced and no extensions of time will be permitted, unless otherwise agreed to in writing by the Parties.

(c)     While the applications are pending, Grossman shall be responsible for maintaining MMC's existence and operation of its New Jersey office.  To this end, the Parties hereby agree that they will not cause or take any action or inaction which causes MMC to engage in any practice, take any action, or enter into any transaction outside the ordinary course of business without the mutual written consent of both Seller and Purchaser.   It is understood and agreed by and between the Parties that all reasonable, necessary and customary expenses associated with the operation of MMC accruing on and after April 1, 2022, and all costs and expenses related to the applications (other than legal fees and costs incurred by Michael Barone, Esq., which shall be the sole obligation of and paid for by Gallagher with no right to reimbursement from Grossman or MMC under any circumstance) shall be funded, in the following order: (1) first, from the commission proceeds due to MMC from the Kevin J. McAteer loan closing in the amount of $7,880.20 ("McAteer Commissions"); (2) second, from business revenues; (3) third, with monies from the existing escrow account in the amount of $400,000.00 being held in the attorney trust account by Mincone & Mincone, P.C. of Melville, New York ("Gallagher Escrow Funds"); and (4) fourth, as the Parties may otherwise agree in

writing. The amount of Gallagher Escrow Funds used for such expenses while the applications are pending shall not exceed $50,000. Upon signing this Agreement, Mr. Mincone shall disburse the sum of $350,000 from the Gallagher Escrow Funds directly to Gallagher and the sum of $50,000 from the Gallagher Escrow Funds to the MMC PNC Bank Operating account, Account Number Redacted maintained by Grossman (the "Interim Expense Carveout"). The Interim Expense Carveout shall not be used to pay for goods or services rendered to MMC before April 1, 2022, with the exception of the ongoing Encompass bill which was due in March, 2022 in the amount of $1,800, which remains due and owing. On or before the last business day of each month while the applications are pending, Grossman shall provide Gallagher a list of all expenses paid that month from the Interim Expense Carveout. If the applications are not approved or are rejected by New Jersey, Connecticut, and/or Florida within sixty (60) days after submission of all documents and applications required of the Parties for one or more reasons due in whole or in part to Grossman and/or MMC, then Grossman and MMC shall immediately reimburse Gallagher for all MMC expenses paid from the Interim Expense Carveout and, to the extent the Interim Expense Carveout has not been exhausted, return the unused portion of the Interim Expense Carveout to Gallagher. If the applications are not approved or are rejected by New Jersey, Connecticut, and/or Florida within sixty (60) days after submission of all documents and applications required of the Parties for reasons solely attributable to Gallagher, then Grossman and MMC shall not be obligated to reimburse Gallagher for any MMC expenses paid from the Interim Expenses Carveout but, to the extent the Interim Expense Carveout has not been exhausted, Grossman and MMC shall return the unused portion of the Interim Expense Carveout to Gallagher. The Interim Expense Carveout shall not be used to pay Edwina Wong Felder, CPA or any entity owned or controlled in whole or in part by her.

(d) Upon approval of the Change of Control from New Jersey and Connecticut and issuance of a license to Gallagher from Florida as set forth herein, Grossman shall be immediately entitled to withdraw and retain Grossman's Capital Reserve in the amount of $263,000.00, plus any accrued interest, which is and shall hereafter remain Grossman's personal asset.

(e) It is specifically understood and agreed by and between the Parties that in the event the applications are not approved or are rejected by either New Jersey, Connecticut and/or Florida after the submission of all documents and applications required of the Parties as set forth in Paragraphs 1(a), 1(b), and 1(c) above, Gallagher shall return her 9% of the stock to MMC, free and clear of all liens, claims and encumbrances, and Grossman shall be entitled to, without interference or objection from Gallagher in any manner whatsoever, dispose and/or surrender his New Jersey and Connecticut licenses.

(f) It is acknowledged and understood that the New York State Department of Financial Services ("NYSDFS") is undergoing an examination of MMC. Grossman shall be solely responsible for any examination fees, fines and/or penalties that may result from the examination. Grossman shall defend, indemnify, and hold Gallagher and MMC harmless from all losses, costs and expenses arising from the examination except for losses, costs, and expenses that the NYSDFS alleges were the result of Gallagher's acts or omissions. Subject to the foregoing exception for losses, costs and expenses that the NYSDFS alleges were the result of Gallagher's

3

acts or omissions, Grossman's obligation to defend, indemnify and hold Gallagher and MMC harmless shall survive any approved Change of Control and the closing of all transactions contemplated by this Agreement and the Purchase Agreement.

(g) Upon signing this Agreement, the Gallagher Escrow Funds, except for the Interim Expense Carveout, shall be immediately released and paid to Gallagher. Upon the return of the Gallagher Escrow Funds to Gallagher, Mincone & Mincone, P.C. shall be released and discharged as the escrow agent. Gallagher shall defend, indemnify, and hold MMC and Grossman harmless from any losses, costs or expenses, including reasonable attorneys' fees, arising from or related to any claim brought by third parties claiming an interest in the Gallagher Escrow Funds.

(h) Pending the Change of Control applications, there shall be no dividends or distributions to shareholders and any revenues received from business operations, other than as set forth herein, shall be used to pay debts as set forth in Paragraph 1(c).

**2. Withdrawal of Termination Notice.** Seller hereby withdraws his termination notice delivered to Purchaser's counsel on February 3, 2022, subject to the terms and conditions set forth in Section 1 above. To the extent any conflict exists between the terms of this Agreement and the terms of the Purchase Agreement, this Agreement shall control.

**3. Dismissals and Releases of Claims Related to the Purchase Agreement**.

(a) Seller, on behalf of himself and all of his predecessors, successors, and assigns, hereby fully, finally and forever releases, acquits and discharges Buyer and all of her successors and assigns of and from any and all claims, counterclaims, actions, causes or rights of action, suits, debts, sums of money, liabilities, damages, losses, covenants, contracts, agreements, promises, assertions, allegations, contentions, controversies and demands of any kind or nature whatsoever, whether at law or in equity, that the Seller now has, ever had or may have had, whether directly or in a representative or any other capacity, for, upon or by reason of any act, omission or other matter, cause or thing arising out of or relating to the negotiation, execution, delivery or performance of the Purchase Agreement or the transactions contemplated thereby, from the beginning of the world to the date of execution of this Agreement, whether such matters, causes or things, or the consequences thereof, are known or unknown, suspected or unsuspected, anticipated or unanticipated, hidden or concealed, disclosed or undisclosed, accrued or unaccrued, material or immaterial, matured or unmatured, contingent or absolute.

(b) Purchaser, on behalf of herself and all of her predecessors, successors, and assigns, hereby fully, finally and forever releases, acquits and discharges Seller and all of his predecessors, successors, and assigns of and from any and all claims, counterclaims, actions, causes or rights of action, suits, debts, sums of money, liabilities, damages, losses, covenants, contracts, agreements, promises, assertions,

allegations, contentions, controversies and demands of any kind or nature whatsoever, whether at law or in equity, that the Purchaser now has, ever had or may have had, whether directly or in a representative or any other capacity, for, upon or by reason of any act, omission or other matter, cause or thing arising out of or relating to the negotiation, execution, delivery or performance of the Purchase Agreement or the transactions contemplated thereby, from the beginning of the world to the date of execution of this Agreement, whether such matters, causes or things, or the consequences thereof, are known or unknown, suspected or unsuspected, anticipated or unanticipated, hidden or concealed, disclosed or undisclosed, accrued or unaccrued, material or immaterial, matured or unmatured, contingent or absolute.

(c) Nothing in this Agreement shall release or discharge any claims for breach of the obligations and undertakings made pursuant to this Agreement, or preclude the Parties from bringing a suit solely to enforce the terms of this Agreement.

**4. Dismissal of the Litigation**.

(a) Upon the signing of this Agreement, Gallagher shall, at her sole expense, take all necessary steps and file with the Court the appropriate papers to secure the dismissal without prejudice of the Litigation and, if necessary, secure the Court's approval thereof. This dismissal is a required term of this Agreement. To the extent necessary, Grossman shall cooperate in the dismissal of the Litigation without prejudice.

(b) Upon the approvals of the applications for Change of Control from New Jersey and Connecticut and the issuance of a license to Gallagher from and Florida, Gallagher fully releases, waives, discharges and relinquishes any and all claims that are the subject of the Litigation, as well as any and all other employment-related claims she had, has or may have against Grossman and MMC, both statutory and at common-law, and shall, at her sole expense, take all necessary steps and file with the Court the appropriate papers to secure the dismissal with prejudice of the Litigation and, if necessary, secure the Court's approval thereof. To the extent necessary, Grossman shall cooperate in the dismissal of the Litigation with prejudice.

(c) It is acknowledged by the Parties that the provision regarding the dismissal of the Litigation set forth herein is an integral and crucial component of this Agreement. It is further acknowledged by the Parties that without such dismissal being granted by the Court, the remaining global settlement of all other issues as contained in this Agreement will fail.

(d) Upon the approval of the applications from New Jersey, Connecticut and Florida, the Parties shall be deemed to have fully released and discharged any and all claims that they now have, or may hereafter have, against each other, whether at law or in equity, arising from any set of facts, transactions or occurrences from the beginning of time through the date of this Agreement.

(e) It is specifically understood and agreed by and between the Parties that in the event

5

Change of Control is not approved or is rejected by either New Jersey or Connecticut and/or in the event Florida does not issue a license to Gallagher within sixty (60) days after submission of all documents and applications required of the Parties as set forth in Paragraph 1(a) and said applications being deemed complete by said states, the Litigation may be reinstated within thirty (30) days thereof and both Purchaser and Seller shall have the ability to bring and pursue any and all affirmative causes of action, defenses, and/or counterclaims against one another they might otherwise respectively have, except for those arising out of the failed Purchase Agreement, which have been and shall remain dismissed and released upon the signing this Agreement as set forth in Section 3 above.

5. **Representations and Warranties Concerning the Sale.**

(a) Seller hereby warrants and represents that he has full power and authority to execute and deliver this Agreement and to perform the obligations hereunder.

(b) Purchaser hereby warrants and represents that she has the full power and authority to execute and deliver this Agreement and to perform her obligations hereunder. .

6. **Recitals**. The WHEREAS recitals in this Agreement are made a part of the terms of this Agreement and are incorporated herein by reference.

7. **No Third-Party Beneficiaries**. This Agreement shall not confer any rights or remedies upon any Person other than the Parties and their respective successors and permitted assigns.

8. **Confidentiality**. The Parties agree that the substance and terms of, but not the fact of, this Agreement shall remain confidential, and shall not be disclosed by any Party except: (a) as may be required to enforce the terms of this Agreement or as may otherwise be required by law; (b) as may be required to secure the dismissals of the Litigation; (c) to secure the necessary approvals from New Jersey, Connecticut, and Florida; and (d) to the Parties' respective attorneys, auditors, accountants, trustees, and/or financial advisors on a confidential need to know basis only.

9. **Necessary Actions**. Each of the Parties hereto agrees to execute and deliver, or to cause to be executed and delivered, all such instruments, and to take all such action as the other Party may reasonably request, in order to effectuate the intent and purposes of, and to carry out the terms of, this Agreement.

10. **No Admission of Liability**. This Agreement is a compromise of disputed claims and does not constitute an admission by any of the Parties of any liability or wrongdoing whatsoever, including, but not limited to, any liability or wrongdoing with respect to any of the allegations that were or could have been raised in the Litigation or arbitration of claims arising out of the failed Purchase Agreement.

**11.     Restrictive Covenants.** There shall be no restrictive covenants or limitations placed upon Grossman after his sale of stock to Gallagher as provided for herein.

**12.     Non-Disparagement**. The Parties shall not disparage, defame, slander, call into disrepute or take any action that could reasonably be expected to adversely affect the personal or professional reputation of one another, their successors or assigns.

**13.     Attorney's Fees and Costs**. Except as otherwise provided in Paragraph 1(c) regarding the payment of Michael Barone Esquire's fees and costs, each of the Parties agree that it is responsible for its own respective fees, costs and expenses (including fees, costs and expenses of legal counsel, investment bankers, brokers, and other representatives and consultants) incurred in connection with the negotiation and actions undertaken in connection with the Purchase Agreement, the Litigation and the negotiation of this Agreement and the performance of its obligations hereunder.

**14.     Advice of Counsel**. Each Party has reviewed this Agreement with independent legal counsel of the Party's own choice, and acknowledges that in executing this Agreement the Party is relying solely on the Party's own judgment, belief, and knowledge and upon the advice and recommendation of the Party's counsel concerning the nature, extent, and duration of the Party's rights and obligations deriving from this Agreement.

**15.     Construction**. The Parties have participated jointly in the negotiation and drafting of this Agreement. In the even an ambiguity or question of intent or interpretation arises, this Agreement shall be deemed to have been mutually prepared by the Parties and shall not be construed against either of them by reason of authorship.

**16.     Final Agreement**. This Agreement constitutes the complete, final, and exclusive statement of each and every term and provision agreed to by and among the Parties with respect to the subject matter hereof and is not subject to any condition not provided herein. This Agreement supersedes all prior or contemporaneous agreements, negotiations, representations, understandings or discussions between the Parties and/or their respective counsel with respect to the subject matter covered hereby. This Agreement shall not be subject to any change, modification, amendment, or addition without the express written consent of counsel on behalf of all Parties.

**17.     Successors And Assigns**. All covenants and agreements and other provisions set forth in this Agreement and made by or on behalf of either Party shall bind and inure to the benefit of the successors, heirs and permitted assigns. No Party may assign either this agreement or any of said Party's rights, interests, or obligations hereunder without the prior written approval of both Seller and Purchaser.

**18.     Severability**. If any clause or provision of this Agreement is determined by any tribunal, court, or arbitrator to be illegal, invalid or unenforceable, it is the intention of the Parties to reach agreement to terms that will lawfully carry out the intended purpose of any such clause or provision, and to take such action as may be necessary to do so. The Parties further intend that the

remainder of this Agreement shall not be affected thereby, and shall remain in full force and effect.

**19. Non-Waiver.**

(a) Any failure by any Party to insist upon the strict performance by any other Party of any of the provisions of this Agreement shall not be deemed a waiver of any of the provisions hereof, and such Party, notwithstanding such failure, shall have the right thereafter to insist upon the strict performance of any and all of the provisions of this Agreement to be performed by such other Party.

(b) No waiver, express or implied, by any Party of any breach or default in the performance by the other Party of his, her, or its obligations under this Agreement shall be deemed or construed to be a waiver of any other breach, whether prior, subsequent or contemporaneous, under this Agreement.

**20. Notice**. All notices, requests, demands and other communications hereunder shall be in writing and shall be deemed to have been given: (i) when delivered personally, (ii) the next Business Day, if sent by a nationally-recognized overnight delivery service (unless the records of the delivery service indicate otherwise), (iii) three Business Days after deposit in the United States mail, certified and with proper postage prepaid, addressed as follows; or (iv) upon delivery if sent by electronic mail or facsimile during a Business Day (or on the next Business Day if sent by electronic mail or facsimile after the close of normal business hours or on a non-Business Day):

(a) if to Seller, to:
Mark Grossman
1435 Morris Avenue
Union, NJ 07083

Copy to:
Zeller & Wieliczko, LLP
120 Haddontowne Court
Cherry Hill, NJ 08034
Attn: Allen S. Zeller, Esquire
Facsimile: 856-428-6314
Email: azeller@zwattorneys.com

Blank Rome
1271 Avenue of the Americas
New York, NY 10020
Attn: Scott D. Samlin, Esquire
Facsimile: [Fax Number]
Email: scott.samlin@blankrome.com

(b) If to Purchaser, to:
Nicole J. Gallagher
11 Eimer Avenue
Malverne, NY 11565

Copy to:
Albergo Law Group, LLC
15 Warren Street, Suite 36
Hackensack, NJ 07601
Attn: Damian L. Albergo, Esquire
Facsimile: 201-351-0402

Any party or other recipient may from time to time change its contact information for purposes of this Agreement by giving notice of such change as provided herein.

**21.   Time of the Essence**. Time is of the essence with respect to all provisions of this Agreement, including, without limitation, all deadlines set forth herein.

**22.   Governing Law**. This Agreement, including the validity hereof and the rights and obligations of the Parties hereunder, shall be construed in accordance with and governed by the laws of the State of New Jersey applicable to contracts made and to be performed entirely in such state without giving effect to the conflicts of laws principles thereof.

**23.   Jurisdiction And Venue**. The Parties agree that any and all disputes arising out of this Agreement shall be heard by a court of competent jurisdiction in the State of New Jersey.

**24.   Counterparts**. This Agreement and any signed agreement or instrument entered into in connection with this Agreement, and any amendments hereto or thereto, may be executed in two or more counterparts and by the different Parties hereto on separate counterparts, each of which when so executed and delivered shall be an original, but all of which together shall constitute one and the same instrument. Any such counterpart, to the extent delivered by means of Electronic Delivery shall be treated in all manner and respects as an original executed counterpart and shall be considered to have the same binding legal effect as if it were the original signed version thereof delivered in person. No Party hereto shall raise the use of Electronic Delivery to deliver a signature or the fact that any signature or agreement or instrument was transmitted or communicated through the use of Electronic Delivery as a defense to the formation of a contract, and each such party forever waives any such defense, except to the extent that such defense relates to lack of authenticity.

**25.   Operation Post Closing.**  Subject to Paragraph 26, Grossman shall provide all assets (including but not limited to all loan files, computers, devices, furniture, passwords and other tangible and intangibles assets, if any) to Gallagher in accordance with New Jersey, Connecticut and Florida banking/finance department requirements. Upon written request, and at Gallagher's sole cost and expense, Grossman shall fully cooperate with Gallagher in the event that any other regulatory agencies (including New York) require any documentation or have any questions concerning any files or any other regulatory item(s).

**26.   Company Property.**  Upon the approval of the applications, Grossman shall promptly turn over all property belonging to MMC in his possession, custody and control to Gallagher, with the exception of the phone number (908-686-7722) and Grossman's Capital Reserve, to which he shall be immediately entitled as per Paragrpah 1(d).

IN WITNESS WHEREOF, the undersigned have executed this Settlement Agreement as of the date first written above.

**WITNESS:**

**PURCHASER**

_____

**NICOLE J GALLAGHER**

**NICOLE J. GALLAGHER**

Dated: _____

**WITNESS:**

**SELLER**

_____

**MARK GROSSMAN**

Dated: _____

**WITNESS:**

**MOUNTAIN MORTGAGE CORP.**

_____

**MARK GROSSMAN**

Dated: _____

**Signature:** _Xe&Gs_
Nicole Gallagher (Apr 26, 2022 17:26 EDT)
**Email:** nicolejg17@gmail.com

10

# SETTLEMENT AGREEMENT AND MUTUAL RELEASE- SSS 4.22.22 - w ER and JM comments incorporated[96][82]-EJR edits 4.24.22[18]

Final Audit Report 2022-04-26

| | |
|---|---|
| Created: | 2022-04-26 |
| By: | Damian Albergo (damian.albergo@albergolaw.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAfbdiECnFchAin6eMrfjOSioWorbmjvwN |

## "SETTLEMENT AGREEMENT AND MUTUAL RELEASE- SSS 4.22.22 - w ER and JM comments incorporated[96][82]-EJR edits 4.24.22[18]" History

- **Document created by Damian Albergo (damian.albergo@albergolaw.com)**
  2022-04-26 - 9:12:41 PM GMT- IP address: 69.113.67.249

- **Document emailed to Nicole Gallagher (nicolejg17@gmail.com) for signature**
  2022-04-26 - 9:13:08 PM GMT

- **Email viewed by Nicole Gallagher (nicolejg17@gmail.com)**
  2022-04-26 - 9:16:47 PM GMT

- **Document e-signed by Nicole Gallagher (nicolejg17@gmail.com)**
  Signature Date: 2022-04-26 - 9:26:09 PM GMT - Time Source: server

- **Agreement completed.**
  2022-04-26 - 9:26:09 PM GMT

Adobe Acrobat Sign

IN WITNESS WHEREOF, the undersigned have executed this Settlement Agreement as of the date first written above.

WITNESS:            PURCHASER

**NICOLE J GALLAGHER**
_____
NICOLE J. GALLAGHER

Dated: _____

WITNESS:            SELLER

*[signature]*
_____
MARK GROSSMAN

Dated: 4/26/22

WITNESS:            MOUNTAIN MORTGAGE CORP.

*[signature]*
_____
MARK GROSSMAN

Dated: 4/26/22

Signature: *[signature]*
Nicole Gallagher (Apr 26, 2022 17:26 EDT)
Email: nicolejg17@gmail.com

10