UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
NICOLE J. GALLAGHER,

                              Plaintiff,                    **MEMORANDUM DECISION
                                                                AND ORDER**
                                                           22-CV-0715 (JMW)

              -against-

MOUNTAIN MORTGAGE CORP., and
MARK GROSSMAN,

                              Defendants.
-----------------------------------------------------------X

**APPEARANCES:**

Andrew G. Costello, Esq.
**Leeds Brown Law, PC**
1 Old Country Road, Suite 347
Carle Place, NY 11514
*Attorney for Plaintiff*

Eric J. Riso, Esq.
Matthew B. Wieliczko, Esq.
**Zeller & Wieliczko, LLP**
120 Haddontowne Court
Cherry Hill, NY 08034
*Attorneys for Defendants*

**WICKS,** Magistrate Judge:

        Adversity does sometimes make for strange bedfellows.  Here, Plaintiff brings this wage

and hour case for alleged underpayments that has blossomed into a settlement in which the

consideration to Plaintiff is her purchase, at a reduced price, of the very business that she claims

underpaid her.  The question before the Court is whether, despite the unique circumstances

presented, this settlement passes muster under *Cheeks v. Freeport Pancake House, Inc.,* 796 F.3d

199 (2d Cir. 2015).  It does, for the following reasons.

1

Plaintiff Nicole J. Gallagher brought this action pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq*. ("FLSA") and the New York Labor Law ("NYLL"), against Defendants Mountain Mortgage Corp. ("MMC") and Mark Grossman ("Grossman").  Employed as a loan processor and mortgage loan originator at MMC, Plaintiff alleges that the wage violations occurred from November 1, 2020, to when she filed the instant lawsuit.  (ECF No. 1.)  The parties resolved their differences, and a settlement was reached back on April 26, 2022.  The settlement as initially presented to the court was found deficient for a variety of reasons set forth in an earlier Report & Recommendation ("R&R").  (ECF No. 15.)

Before the Court now is the parties' renewed joint request for settlement approval and dismissal of this case with prejudice.  (*See* ECF Nos. 34, 35.)  The uniqueness of this proposed resolution aside,[1] for the reasons set forth below, the undersigned finds that the parties' settlement is fair and reasonable, and their joint motion for settlement approval is hereby granted.

## I.     BACKGROUND

### A.  *Procedural Background*

The parties filed their original joint motion for settlement approval on May 6, 2022. (ECF No. 9.)  That motion was referred to the undersigned by the assigned district judge, the Hon. Rachel P. Kovner, for a report and recommendation.  (Electronic Order dated May 9,

---

[1] The parties have not provided, nor has the Court unearthed, any cases providing for the settlement of FLSA and NYLL claims through the purchase of the business by a plaintiff.  To the extent that Defendants argue that the uniqueness of this settlement exempts them from the expansive reach of *Cheeks* review, that argument is misguided.  (*See* ECF No. 35.)  First, caselaw offered in support of this argument ignores the binding precedent in this circuit, which is the only authority district courts situated in this circuit are obliged to follow.  *See., e.g., Langsam v. Vallarta Gardens*, No. 08-CV-2222, 2009 WL 2252612, at *2 (S.D.N.Y. July 28, 2009) ("Controlling decisions include decisions from the United States Court of Appeals for the Second Circuit; they do not include decisions from other circuits or district courts, even courts in the Southern District of New York.").  Additionally, Defendants' argument is partially premised on an antiquated understanding as to the scope of *Cheeks* review.  *See Samake v. Thunder Lube, Inc.*, 24 F.4th 804, 810 (2d Cir. 2022) ("[T]he logic of Cheeks as applied to Rule 41(a)(1)(A)(ii) dismissals with prejudice applies equally to Rule 41(a)(1)(A)(i) dismissals without prejudice.").

2022.)  The undersigned issued a comprehensive R&R on November 22, 2022 that is incorporated herein by reference.  (*See* ECF No. 15.)  The R&R recommended the motion be denied given certain deficiencies that are discussed further below.

The parties then appeared for a status conference before the undersigned on December 6, 2022.  (ECF No. 18.)  The parties agreed to withdraw their pending motion without prejudice to renew it consistent with the discussion held on the record and the issues identified in the R&R.  (*Id.*)  Thus, the R&R was rendered moot, and was withdrawn.  (*Id.*)  The parties subsequently consented to the jurisdiction of the undersigned and the case was re-assigned to the undersigned for all further proceedings.  (ECF No. 20.)

A status conference was held on April 4, 2023 after the undersigned granted Plaintiff's former counsel's motion to withdraw and new counsel appeared on her behalf.  (ECF No. 32.)  The parties advised that Plaintiff intended to file a renewed application for settlement approval addressing the deficiencies identified in the R&R.  (*Id.*)  The renewed motion was filed on May 19, 2023 (ECF No. 34) and is currently pending before the undersigned.  And the parties filed their fully executed settlement agreement on September 11, 2023.  (ECF No. 38-1.)

The parties then appeared for a Fairness Hearing on September 12, 2023 to discuss the motion.  (ECF No. 39.)  At the hearing, Plaintiff was questioned under oath about the settlement.  *Id.*  After discussion with the parties and their counsel, the Court approved the settlement agreement for the reasons set forth on the record and stated that a written Memorandum Decision and Order would follow.  (ECF No. 39.)

### B.  *Factual background*

On February 8, 2022, Plaintiff commenced this action claiming that her employer, MMC had engaged in violations of the FLSA and NYLL.  (ECF No. 1.)  MMC is a banking institution

that is currently licensed to originate mortgage loans in New Jersey and Connecticut.  (*Id.* at ¶ 18.)  Plaintiff has over "25 years of experience in the mortgage banking industry" and is "licensed to originate mortgage loans in New York, New Jersey, Connecticut, and Florida." (ECF No. 34-1 at ¶ 2.)  As a loan processor and mortgage loan originator, Plaintiff's primary duties were to process and originate mortgage loans in New Jersey, Connecticut, New York, and Florida.  (ECF No. 1 at ¶¶ 20, 22.)  Plaintiff performed these duties for the Defendants from her home, located in New York.  (*Id.* at ¶ 23.)

Plaintiff alleges she is owed around $295,619.07 in damages inclusive of "underpayments, liquidated damages, pre-judgment interest, and penalties[.]"  (ECF No. 34-1 at ¶ 43.)  During her employment at MMC, Plaintiff allegedly worked Monday through Friday from 7 a.m. to 10 p.m., and on Saturdays and Sundays for 5 hours each day -- totaling 85 hours each week.  (ECF No. 1 at ¶ 25.)  While working at MMC, Plaintiff alleges she was never given, nor did she ever take, uninterrupted meal breaks in excess of 15 minutes.  (*Id.* at ¶ 27.)  Plaintiff alleges that during the months of November and December 2020, Defendants failed to pay her any compensation at all.  (*Id.* at ¶ 28.)  Plaintiff explains that during the entire year of 2021, Defendants paid Plaintiff a set weekly salary.  (*Id.* at ¶ 30)  However, from on or about January 1, 2022, to the time of filing the lawsuit, Plaintiff was paid nothing.  (*Id.* at ¶ 29.)

Plaintiff also alleges that Defendants never paid her one-and-one half times her regular rate of pay for any hours worked in excess of 40 hours each week, and never paid Plaintiff any of the commissions to which she was entitled.  (*Id.* at ¶ 31.)  Plaintiff further alleges that Defendants failed to provide her with complete and accurate paystubs along with her weekly earnings and failed to provide her with a notice and acknowledgement of pay rate and payday, or any type of wage notice in violation of the NYLL.  (*Id.* at ¶ 35.)  Naturally, Defendants contest

the merits of Plaintiff's assertions.  It was Defendants' understanding that Plaintiff was not an hourly employee, rather, she "was an owner and officer of MMC" and "was to be paid by commission no different than other previously employed salespersons of MMC."  (ECF No. 35 at 5.)

Prior to this action, the parties had entered into a purchase agreement under which Plaintiff was to purchase MMC for $500,000.  (ECF No. 9 at 2.)  The parties explain that Plaintiff was employed at MMC in anticipation of her anticipated purchase of the company.  (*Id.*) The purchase agreement was conditioned on a successful application for a change of ownership with the New York State Department of Financial Services.  (*Id.*)  This contingency did not occur by the deadline contemplated in the purchase agreement, which exacerbated the already deteriorating relationship between the parties.  (*Id.*)  Subsequently, the parties engaged in "cross-demands for damages and monies owed," which include the damages from wages allegedly owed that Plaintiff seeks in this action.  (*Id.*)

Settlement negotiations apparently led to the parties agreeing to settle this case by lowering the purchase price of MMC by $400,000, so that the purchase price would now be $100,000.  (ECF No. 9 at 1, 3.)  No formal valuation of the business was ever conducted to reach the original $500,000 purchase price.  (ECF No. 34-1 at ¶¶ 4, 6.)  Plaintiff's reduced purchase price of $100,000 was similarly calculated without any formal valuation.  (*Id.* at ¶ 61.)  Instead, both numbers were the product of "advice from [Plaintiff's] attorneys, [her] experience in the industry" and her "sense of the value" of the mortgage banking licenses.  (*Id.* at ¶ 61.)

Plaintiff represents that she cannot "break down exactly" what portions of the reduced purchase price is attributable to what specific single factor.  (*Id.* at ¶ 62.)  In Plaintiff's view, the value of her FLSA claims and the loss of the New York license were both factors that were "in

the mix" along with her "desire to own MMC outright, avoid costly arbitration, avoid the stress and expense of this lawsuit, and generally just move on with [her] life."  *(Id.)*

The parties' settlement agreement aims to kill two birds with one stone -- resuscitate the parties' failed transaction and settle Plaintiff's wage and hour claims.  The original agreement purports to supersede the purchase agreement, and contemplated, *inter alia*, that if the instant motion is granted, Grossman will sell his remaining 91% of common stock in MMC to Plaintiff for $100,000.  (ECF No. 9 at 2.)  Accordingly, Plaintiff would pay $100,000 to purchase MMC, rather than $500,000 as set forth in the original purchase agreement.  (*Id.*)  The parties allege that the reduction in the purchase price of MMC is substantial consideration.  (*Id.*)  That purchase has already occurred, and Plaintiff now owns 100% of MMC.

## II.  <u>APPLICABLE STANDARD</u>

Federal Rule of Civil Procedure 41 provides, in relevant part, that:

Subject to . . . any applicable federal statute, the plaintiff may dismiss an action without a court order by filing:

(i)  a notice of dismissal before the opposing party serves either an answer of a motion for summary judgment; or

(ii)  a stipulation of dismissal signed by all parties who have appeared.

Fed. R. Civ. P. 41(a)(1)(A).

In *Cheeks*, the Second Circuit held that the FLSA is an "applicable federal statute" under Rule 41 because of "the unique policy considerations underlying" the act.  *Cheeks*, 796 F.3d at 206.  Such considerations include the laudable aim of "'extend[ing] the frontiers of social progress by insuring to all our able-bodied working men and women a fair day's pay for a fair day's work.'"  *Id.*  (quoting *A.H. Phillips, Inc. v. Walling*, 324 U.S. 490, 493 (1945)).  The

protections of the FLSA are strong, even "employees cannot waive the protections of the FLSA."
*Perry v. City of New York*, No. 21-2095, 2023 WL 5490572, at *7 (2d Cir. Aug. 25, 2023).

Accordingly, in this Circuit, Rule 41's "stipulated dismissals settling FLSA claims with
prejudice require the approval of the district court or the [Department of Labor] to take effect."
*Cheeks*, 796 F.3d at 206.

"[I]f the proposed settlement reflects a reasonable compromise over contested issues, the
settlement should be approved" by the reviewing court. *Ceesae v. TT's Car Wash Corp.*, No. 17-
CV-291 (ARR) (LB), 2018 WL 1767866, at *2 (E.D.N.Y. Jan. 3, 2018, *report and
recommendation adopted*, 2018 WL 741369 (Feb. 7, 2018).  In reviewing the reasonableness of
any proposed settlement, courts consider the totality of the circumstances, including the
following relevant factors:

> (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement
> will enable the parties to avoid anticipated burdens and expenses in establishing
> their respective claims and defenses; (3) the seriousness of the litigation risks faced
> by the parties; (4) whether the settlement agreement is the product of arm's-length
> bargaining between experienced counsel; and (5) the possibility of fraud or
> collusion.

*Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) (internal quotation marks
omitted).  Factors specifically weighing against settlement approval include:

> (1) the presence of other employees situated similarly to the claimant; (2) a
> likelihood that the claimant's circumstance will recur; (3) a history of FLSA non-
> compliance by the same employer or others in the same industry or geographic
> region; and (4) the desirability of a mature record and a pointed determination of
> the governing factual or legal issue to further the development of the law either in
> general or in an industry or in a workplace.

*Id.* at 336 (internal quotation marks omitted).

Even if an application of the *Wolinsky* factors demonstrates that the agreement is fair and
reasonable, courts must also consider whether the settlement "complies with the Second Circuit's

admonitions as articulated in *Cheeks*[.]" *Ezpino v. CDL Underground Specialists, Inc.*, No, 14-CV-3173 (DRH) (SIL), 2017 WL 3037483, at *1 (E.D.N.Y. June 30, 2017), *report and recommendation adopted*, 2017 WL 3037406 (July 17, 2017).  Specifically, courts should guard against "highly restrictive confidentiality provisions," overbroad releases that "would waive practically any possible claim against the defendants, including unknown claim and claims that have no relationship whatsoever to wage-and-hour issues," and "a[ny] provision that would set the fee for plaintiff's attorney . . . without adequate documentation."  *Cheeks*, 796 F.3d at 206.

Courts must also ensure that any attorney's fees provided for in the agreement are reasonable.  *See* 29 U.S.C. § 216(b) ("The Court . . . shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action"); *see also Ceesae*, 2018 WL 1767866, at *2 (noting that courts engaging in a *Cheeks* review must "evaluate[] the reasonableness of any attorney's fees included in the proposed settlement").

Where a court "concludes that a proposed settlement in a FLSA case is unreasonable in whole or in part, it cannot simply rewrite the agreement, but it must instead reject the agreement or provide the parties an opportunity to revise it."  *Fisher v. SD Prot. Inc.*, 948 F.3d 593, 597 (2d Cir. 2020).  That is, it is not this Court's role to "blue pencil" or modify the proposed agreement. Rather, the Court's role is simply to assess the terms of the proposed settlement to ensure that the agreement is fair and reasonable.  *Wolinsky*, 900 F. Supp. 2d at 335 ("[B]efore a district court enters judgment, it must scrutinize the settlement agreement to determine that the settlement is fair and reasonable.").

### III.   <u>DISCUSSION</u>

In the R&R, the undersigned found that the parties' joint motion for settlement approval was deficient because the agreement contained several problematic provisions that ran contrary to public policy and required revision.  Namely, impermissible non-disparagement and confidentiality provisions.  Moreover, absent from the application was essential information for the Court to evaluate whether the proposed agreement was indeed fair and reasonable.  The parties failed to (i) provide the bona fides of the parties' FLSA dispute, (ii) provide calculations of Plaintiff's potential recovery, (iii) explain what portion of the reduced purchase price of MMC constituted consideration for Plaintiff's FLSA claims, (iv) provide information sufficient to determine whether the agreement was a means of avoiding litigation risk, and (v) properly address attorneys' fees.

Each area is re-explored below in light of the parties' renewed joint motion for settlement approval.  (ECF No. 34.)

### A.  *Bona Fides of the Dispute*

The parties "must provide enough information for the court to examine the bona fides of the dispute."  *Mamani v. Licetti,* No. 13-CV-7002 (KMW)(JCF), 2014 WL 2971050, at *1 (S.D.N.Y. July 2, 2014).  "The employer should articulate the reasons for disputing the employee's right to a minimum wage or overtime, and the employee must articulate the reasons justifying his entitlement to the disputed wages."  *Id.*  In the original motion, the parties explained that Plaintiff filed her claims after the parties failed to consummate the transaction contemplated under the purchase agreement due to various issues.  But the parties made only cursory references to the FLSA claims themselves and did not offer an explanation of the bona

fides of the dispute.  In essence, the parties had brushed the specifics of the FLSA dispute under the rug and instead focused on the facts related to reviving their prior unrelated transaction.

Plaintiff's declaration in support of the instant motion now provides the background underlying Plaintiff's wage and hour claims.  (ECF No. 34-1 at ¶¶ 30–32.)  Plaintiff maintains that in the more than one year that she spent at MMC she, *inter alia*, worked around 85 hours each week, was not paid at all during certain months, never received overtime despite consistently working over 40 hours per week, and did not receive accurate paystubs and weekly earnings, or notice and acknowledgement of her pay rate.  (*Id.*)  Plaintiff provided a full explanation and breakdown of her damages as noted below.  On the other hand, Defendants assert that at all relevant times, it was their understanding that Plaintiff was not an hourly employee, and instead "was an owner and officer of MMC" that "was to be paid by commission no different than other previously employed salespersons of MMC."  (ECF No. 35 at 5.)

Now, the parties offer more detail that allows the Court to ascertain that a bona fide dispute exists with respect to the wage and hour claims asserted and that the agreement is not simply a "a mere waiver of statutory rights brought about by an employer's overreaching."  *See Medina v. NYC Harlem Foods Inc.*, No. 21-CV-1321 (VSB), 2022 WL 1184260, at *5 (S.D.N.Y. Apr. 21, 2022).

### B.  *Potential Range of Recovery*

The parties originally asserted that the Plaintiff's potential recovery of damages in this action are "relatively significant, reaching potentially over $200,000."  (ECF No. 9 at 3.)   The flaw with this barebones approach was that it was inadequate for the parties to summarily provide an unsupported number.  *See, e.g.*, *Sanchez Gonzalez v. Tribeca Hummus Inc.*, No. 18-

CV-10664 (ER), 2020 WL 409750, at *1 (S.D.N.Y. Jan. 24, 2020) (refusing to approve a *Cheeks* settlement because the parties did not provide the basis for the range of recovery).

Plaintiff now asserts that her potential range of recovery is $295,619.07.  (ECF No. 34-1 at ¶ 43.)  This figure includes "underpayments, liquidated damages, pre-judgment interest, and penalties[.]"  (*Id.*)  Plaintiff has now provided the relevant data to support this asserted figure including her hourly rate, overtime hours owed, commissions owed, and the applicable penalties. (*Id.* at ¶¶ 33–43.)  Plaintiff even provided spreadsheets detailing her unpaid wages (ECF No. 34-2) and unpaid commissions  (ECF No. 34-3).

### C.  *Plaintiff's Consideration*

It was less than clear what portion of the reduced purchase price of MMC was in consideration of Plaintiff's FLSA claims.  *See Kim v. Choi*, No. 19-CV-8911 (OTW), 2021 WL 510156, at *2 n.3 (S.D.N.Y. Feb. 9, 2021) ("When examining the proportion of recovery, courts often look at what Plaintiff would receive rather than the total settlement amount.").  Apparently, Plaintiff contemplated purchasing MMC for $500,000, and now only had to pay $100,000 "albeit without a New York Mortgage Banker's license."  (ECF No. 9 at 3.)  Plaintiff's alleged range of recovery was previously over $200,000, and we now know it is $295,619.07.  Though the parties represented that Plaintiff's FLSA claims had been factored into the $400,000 reduction in purchase price, to what extent exactly, was left to the imagination.

This was of course troubling because the parties had not provided any basis for the Court to determine that Plaintiff was in fact receiving *any* consideration.  The Court was unable to tell which portion of the $400,000 reduction in purchase price, if any, was consideration for the release of Plaintiff FLSA claims, and which portion was attributable to other factors.  Notably, the Court did not have information describing the valuation or appraisal of MMC at the time the

parties agreed to purchase it for $500,000 compared to its valuation at the time the parties entered into the agreement reducing the purchase price to $100,000. Moreover, the agreement stated that MMC's New York Mortgage Banker's license was not part of this new deal because it was in the process of being surrendered. (ECF No. 9-1 at 2.) The parties did not explain what this meant, or what effect, if any, this surrender had on the purchase price of MMC.

In order to facilitate a more meaningful review of the fairness of the proposed settlement, the parties were advised to provide the value of MMC so that the Court may consider whether adequate consideration was exchanged. Plaintiff's declaration now provides more color. No formal valuation was conducted to reach the original $500,000 purchase price. (ECF No. 34-1 at ¶¶ 4, 6.) Plaintiff's reduced purchase price of $100,000 was similarly not calculated based on a formal valuation. (*Id.* at ¶ 61.) Instead, both figures were the product of "advice from [Plaintiff's] attorneys, [her] experience in the industry" and her "sense of the value" of the mortgage banking licenses. (*Id.* at ¶ 61.) Plaintiff represents that she cannot "break down exactly" what portions of the reduced purchase priced is attributable to what specific single factor. (*Id.* at ¶ 62.) In Plaintiff's view, the value of her FLSA claims and the loss of the New York license were both factors that were "in the mix" along with her "desire to own MMC outright, avoid costly arbitration, avoid the stress and expense of this lawsuit, and generally just move on with [her] life." (*Id.*)

At the Fairness Hearing, Plaintiff was questioned by the Court and the following was confirmed to the satisfaction of the undersigned:

(i)     Plaintiff reviewed the revised settlement agreement filed on September 11, 2023 (ECF No. 38-1) with her counsel;

(ii)    Plaintiff consents to all the terms and conditions of the settlement agreement and understands these terms and conditions cannot be orally modified;

(iii)    In Plaintiff's view her FLSA claims are fairly captured by the reduced purchase price;

(iv)    In Plaintiff's view the reduced purchase price is a fair and reasonable figure and compromise of all of Plaintiff's wage and hour claims;

(v)    Plaintiff was not forced or coerced into signing the settlement agreement nor was she threatened by anyone;

(vi)    Plaintiff was not promised anything that is not captured within the written terms of the settlement agreement, and;

(vii)    Plaintiff understands that upon approval of the settlement agreement this case will be dismissed with prejudice.

The Court is satisfied with the fairness of the proposed settlement and finds that the agreement is not in tension with "the FLSA's primary remedial purpose: to prevent abuses by unscrupulous employers, and remedy the disparate bargaining power between employers and employees." *Cheeks*, 796 F.3d at 207. The Court gives due weight to the fact that Plaintiff has over "25 years of experience in the mortgage banking industry" and is "licensed to originate mortgage loans in New York, New Jersey, Connecticut, and Florida." (ECF No. 34-1 at ¶ 2.) And that Plaintiff herself worked at MMC with the intention of inevitably owning it. This is markedly different than a disinterested third-party purchase of the business. In the latter case, a formal valuation might be prudent and even necessary. Here, given Plaintiff's experience and familiarity with the business, her comfort level with the reduced purchase price is relevant. The

Court also gives weight to the Plaintiff's clearly expressed desire "to get all these issues behind [her] and move on with [her] life."  (ECF No. 34-1 at ¶ 53.)

The goal of *Cheeks* review is to protect plaintiffs from potential abuse in settlements. *Cheeks*, 796 F.3d at 206.  Without, *inter alia*, each party's estimate of how many hours Plaintiff worked, and Plaintiff's hourly wage, the Court could not determine whether the Agreement is fair and reasonable.  *See Tung v. Jade Spoon Asian Cuisine Inc.*, No. 21 CIV. 10651 (AEK), 2022 WL 1315612, at *2 (S.D.N.Y. May 3, 2022) ("[T]he Cheeks Application fails to adequately explain Plaintiff's calculations for potential recovery, which makes it impossible for the Court to evaluate the merits of the proposed settlement.").  The original motion completely neglected to provide the basis for Plaintiff's possible range of recovery, explain whether a bona fide dispute exists as to Plaintiff's FLSA claims, and delineate the consideration Plaintiff was receiving for her claims.  These deficiencies have now been resolved.

Considering the Plaintiff's representations, and having conducted a Fairness Hearing on September 12, 2023 at which the Court confirmed with Plaintiff that in her opinion the reduced value of MMC fairly encompasses her FLSA claims, that the settlement is a fair and reasonable compromise, and that she desires to end this litigation, the Court finds that these factors heavily weigh in favor of settlement approval.

**D.  *Seriousness of Risk Faced by the Parties***

The Court was previously unable to properly evaluate the seriousness of the litigation risks faced by the parties.  The parties had pointed out that should this settlement be approved, the Plaintiff will avoid the risk of "further litigating her claims in two separate forums—*i.e.,* her FLSA claims in this Court and her claims under the [purchase agreement] before an arbitration panel pursuant to the arbitration clause in the [purchase agreement]," since the Agreement, if

approved, would "supersede the [purchase agreement]" and "obviate all such litigation." (ECF No. 9 at 2–4.)

However, putting aside claims unrelated to Plaintiff's FLSA claims, without the bona fides of the parties' dispute, the Court was unable to assess whether this Agreement is a means of avoiding any litigation risk, let alone a significant risk, by the parties as to the FLSA claims in this action. Now it can. Given that a bona fide dispute exists between the parties as to Plaintiff's FLSA claims, the ability to avoid litigating and attending arbitration in two fora is indeed quite favorable to Plaintiff.

Moreover, if the motion were rejected on this basis alone, and Plaintiff were to lose at trial, Plaintiff would be severely disadvantaged. Plaintiff now owns 100% of MMC and that purchase would be open to attack if the parties did not consummate the settlement. A trial loss could potentially turn Plaintiff's status as a 100% owner of MMC into a 0% owner, with no remaining claims against Defendants. On the other hand, Defendants face the possibility of ponying up the full range of Plaintiff's potentially recovery.

Thus, the parties face serious litigation risks that dissipate due to this agreement and this factor favors settlement.

### E. *Attorney Fees*

In reviewing settlements for fairness under *Cheeks*, the reviewing court must guard against "a[ny] provision that would set the fee for plaintiff's attorney . . . without adequate documentation to support such a fee award." *Cheeks*, 796 F.3d at 206; *see also Gurung v. White Way Threading LLC*, 226 F. Supp. 3d 226, 229–30 (S.D.N.Y. 2016) ("In an FLSA case, the Court must independently ascertain the reasonableness of the fee request."). "*Cheeks* and *Wolinsky* contemplate using attorney fees as an insight into the fairness of the settlement. "A fee

that is so disproportionate to a plaintiff's recovery raises questions of whether counsel has taken monies that should be awarded to the employee." *See Douglas v. Allied Universal Sec. Servs. LLC*, 371 F. Supp. 3d 78, 85 (E.D.N.Y. 2019).

Here, however, there is no settlement amount earmarked for payment of attorney fees nor was there anything originally submitted that describes Plaintiff's fee arrangement.  Thus, the Court noted that in any renewed motion for approval of the proposed settlement, the attorney fees issue must at least be addressed.  Plaintiff now explains that various attorneys have represented her from the negotiation for the purchase of MMC to the present.  (ECF No. 34-1 at ¶¶ 65–68.)  All of them have been paid on an hourly basis and none have had any contingent interest in the outcome of this action, except one.  (*Id.*)  That one attorney represented Plaintiff for only a brief period of time, having filed the Complaint on her behalf, before being replaced within 3 months.  (*Id.*)  Further, that one attorney has not expressed "any intention of asserting a lien over the reduced purchase price." (*Id.* at ¶ 68.)

This factor is neutral, as Plaintiff is not seeking attorney fees and each side is responsible for their own fees.

### F.  *The Revised Provisions*

The two troublesome provisions in the prior settlement agreement that barred approval have now been appropriately revised, namely, the non-disparagement and confidentiality provisions.

#### 1.  Non-disparagement

First, the original non-disparagement clause of the agreement was far too broad and barred Plaintiff from making any negative comments about Defendants without the necessary carve out for truthful statements.  The problem with non-disparagement provisions is that they

"can be contrary to public policy because they prevent the spread of information about FLSA actions to other workers (both employees of Defendants and others), who can use that information to vindicate their statutory rights." *Felix v. Breakroom Burgers & Tacos*, No. 15-CV-3531 (PAE), 2016 WL 3791149, at *3 (S.D.N.Y. Mar. 8, 2016). If a non-disparagement provision "broadly bars plaintiffs from making any negative comments about defendants . . . , 'it must include a carve-out for truthful statements about plaintiffs' experience litigating their case.'" *Id.* (quoting *Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 180 n.65 (S.D.N.Y. 2015); *see also Snead v. Interim Healthcare of Rochester, Inc.*, 286 F. Supp. 3d 546, 553 (W.D.N.Y. 2018) (approving a settlement agreement that specifically stated "[a]ny party is allowed to make truthful statements related to or concerning the Action"); *Cortes v. New Creators, Inc.,* 15-CV-5680, 2016 WL 3455383, at *4 (S.D.N.Y. June 20, 2016) ("[A]lthough the Agreement contains a non-disparagement provision, it includes the requisite 'carve-out' for truthful statements about plaintiffs' experience litigating this case.").

Here, the non-disparagement clause still provides that "[t]he parties shall not disparage, defame, slander, call into disrepute or take any action that could reasonably be expected to adversely affect the personal or professional reputation of one another, their successors or assigns." (ECF No. 38-1 at 7.) However, it now contains the requisite "carve-out" for truthful statements about Plaintiff's experience litigating this case because it also provides as follows: "However, any party is allowed to make truthful statements related to or concerning the Litigation." (*Id.*)

Accordingly, the non-disparagement provision now comports with existing caselaw.

2. **Confidentiality**

The confidentiality clause in the original agreement was also deficient.  That provision was entirely inconsistent with Congressional intent underlying the enactment of the FLSA, and courts have routinely rejected FLSA settlements that included similar confidentiality provisions. "Many courts have observed, both before and after *Cheeks* was decided, '[c]onfidentiality provisions in FLSA settlements are contrary to public policy.'"  *Souza v. 65 St. Marks Bistro*, No. 15-CV-327 (JLC), 2015 WL 7271747, at *4 (S.D.N.Y. Nov. 6, 2015) (alteration in original) (quoting *Guerra–Alonso v. West 54 Deli. Corp.,* No. 14–CV–7247 (WHP), 2015 WL 3777403, at *1 (S.D.N.Y. May 22, 2015)); *see also Thallapaka v. Sheridan Hotel Assocs. LLC*, No. 15-CV-1321, 2015 WL 5148867, at *1 (S.D.N.Y. Aug. 17, 2015) ("Indeed, the overwhelming majority of courts reject the proposition that FLSA settlement agreements can be confidential.").

The original and revised confidentiality provision still state in relevant part as follows:

> The Parties agree that the substance and terms of, but not the fact of, this Agreement shall remain confidential, and shall not be disclosed by any party except (a) as may be required to enforce the terms of this Agreement or as may otherwise be required by law; (b) as may be required to secure the dismissals of the Litigation; (c) to secure the necessary approvals from New Jersey, Connecticut, and Florida; and (d) to the Parties' respective attorneys, auditors, accountants, trustees, and/or financial advisors on a confidential need to know basis only.

(ECF No. 38-1 at 6.)

The issue with this provision was that although it allowed Plaintiff to discuss the existence of the agreement it otherwise broadly barred Plaintiff "from discussing any aspect of the case or settlement[.]"  *Souza*, 2015 WL 7271747, at *4; *see also Mahalick v. PQ N.Y., Inc.*, No. 14-CV-899 (WHP), 2015 WL 3400918, at *2 (S.D.N.Y. Apr. 30, 2015) (noting that "although filed publicly, the Proposed Agreement stifles disclosure of its terms" and declining "to approve an FLSA settlement agreement with such terms.").  The revised provision now

includes the following sentence tacked on to the end: "However, this confidentiality clause shall not prevent the Parties from discussing the facts underlying, or the settlement of, the Litigation." (ECF No. 38 38-1 at 6.)

This appropriately remedies the issue with the prior provision and allows Plaintiff to freely speak about the case or settlement. *Cf. Lopez*, 96 F. Supp. 3d at 181 ("The Court accordingly will not approve the proposed settlement, at least on the present record, unless the confidentiality . . . provisions . . . are removed or narrowly tailored to allow plaintiffs to discuss their litigation of this case.").

### G. *The Remaining Factors*

The undersigned previously noted that apart from the identified deficiencies -- that have now been remedied -- all the remaining factors weighed in favor of approval if the settlement were revised.

First, given the early stage at which this matter has reached a proposed settlement, the Court finds that parties will undoubtedly escape extensive ongoing litigation costs by avoiding further discovery, document drafting, researching, and engaging in further communications.  The settlement allows the parties to avoid the inevitable burdens and expense in preparing the parties' claims and defenses.  Settling also removes the risks attendant with litigation.  Courts have recognized that discovery and trial practice may "meaningfully decrease possible recovery for plaintiffs." *See Flores v. Mamma Lombardi's of Holbrook, Inc.*, 104 F. Supp. 3d 290, 299 (E.D.N.Y. 2015).

Second, the parties have engaged in arms-length bargaining, without fraud or collusion, to achieve the settlement.  The parties state they have "relatively equal bargaining power," and

settlement was reached through "vigorous arms-length negotiations."  (ECF No. 9 at 2–3.)
Plaintiff is a "sophisticated professional."  (*Id.* at 2.)  This agreement contemplates the proposed
purchase of MMC under revised terms, and Plaintiff now owns MMC.  (*Id.* at 2.)  This base
transaction itself was previously contemplated in the old purchase agreement, and was executed
between the parties without the shadow of Plaintiff's FLSA claims.  (*Id.* at 2.)

Additionally, this agreement was jointly negotiated and drafted by the parties, and
reviewed by each party with independent counsel.  The settlement reflects a desire by both
parties to settle and compromise all the claims asserted by Plaintiff in this case.  (*Id.* at 3–4.)
Thus, the record supports the Court's finding that this agreement was the product of arms-length
bargaining.

Third, while the agreement contains a broad release, the release is mutual.  It is true that
courts generally refuse to approve FLSA settlements "with broad releases of claims, concluding
that they conflict with the FLSA's remedial purposes." *Lola v. Skadden, Arps, Meagher, Slate &
Flom LLP*, No. 13-CV-5008 (RJS), 2016 WL 922223, at *2 (S.D.N.Y. Feb. 3, 2016).  But when,
like here, there are mutual releases of claims, those are considered fair and reasonable and do not
run afoul of the FLSA's purpose of preventing abuse by employers.  *Id.* at *2 ("[T]he Court is
satisfied that the Settlement, including the release of non-FLSA claims, was the fair result of a
balanced negotiation in which Plaintiffs were represented by able counsel.").  Specifically, mutual
releases, binding on both parties are acceptable because they "ensure that both the employees and
the employer are walking away from their relationship up to that point in time without the potential
for any further disputes."  *Id.*

Similarly, here, the Court is satisfied that the broad mutual release is fair and reasonable
and the result of a balanced negotiation between the parties.  The release is binding on both

Plaintiff and Defendant and serves as a "walk away provision."  *See Sarit v. Westside Tomato, Inc.*, No. 18-CV-11524 (RA), 2021 WL 2000328, at *2 (S.D.N.Y. May 19, 2021) ("[C]ourts look more favorably upon broad mutual release provisions where 'the employer and employee have ceased their employment relationship' and the mutual release therefore 'operates as a walk away provision [that] permits each side to terminate their relationship entirely free from fear that the other will re-engage in the form of a lawsuit.'" (second alteration in original) (quoting *Strauss v. Little Fish Corp.*, No. 19-CV-10158 (LJL), 2020 WL 4041511, at *5 (S.D.N.Y. July 17, 2020)).

## <u>CONCLUSION</u>

Accordingly, Plaintiff's motion for *Cheeks* approval (ECF No. 34) is hereby granted. The parties are to file an executed stipulation of dismissal on or before **October 13, 2023**.

Dated: Central Islip, New York
      September 14, 2023

S O    O R D E R E D:

<u>/S/ *James M. Wicks*</u>
JAMES M. WICKS
United States Magistrate Judge

21